The next case on the calendar is Palmer v. Fannie Mae. May it please the Court, Michael Martin on behalf of Plaintiff Appellant Felicia Palmer. With the Court's permission, I request that Jessica Angle be permitted to argue this matter on behalf of Ms. Palmer pursuant to the student appearance motion we made on consent of all parties last week. Thank you, Your Honor. Ms. Angle. May it please the Court. My name is Jessica Angle, and I represent Ms. Palmer in this appeal from the Rule 12b6 dismissal of her complaint of pregnancy discrimination under the Fair Housing Act by the District Court. The Court dismissed the complaint because it incorrectly determined that she stated only insufficient conclusory facts and failed to explain the link between her pregnancy and how Fannie Mae treated her. But the complaint contained the following sufficient facts. In 2011, when the housing market was reeling, Ms. Palmer was an unmarried, pregnant mother of two renting her home when she was served with an eviction notice, because by no fault of her own, the property was going into foreclosure. She decided to purchase the property, but despite being told by Fannie Mae that she was a qualified buyer, obtaining preapproval for a loan, and making three market-rate offers, her attempts to do so were rejected. Only after months of negotiation did Fannie Mae claim that they were rejecting her offers and demanding 237 percent more than the listed asking price — Don't you have to plead that this was on account of her being pregnant? Not that she got a bad deal, not that they were using sharp tactics, not that they were misbehaving in many other ways, but that this was on account of her being pregnant? Doesn't that have to be in the complaint? Yes, Your Honor. And while Ms. Palmer may not have made that connection in an articulate way, and although the facts may have gotten lost in the complaint's wordiness, the facts allowing us to make that inference are certainly there. Help me with that. Simply because of the fact that she was denied the opportunity and somebody else got the opportunity to buy the property at a much lower price. And her offers were consistent with what the house was ultimately sold for. But again, the connection between that and her pregnancy is the issue that I'm wrestling with. Yes, Your Honor. The complaint may not explicitly state that upon information and belief, Fannie Mae discriminated against Ms. Palmer because she was pregnant. She was pro se at the time. She was, Your Honor. We read the complaint favorably to make the inferences that are in it because she was pro se. So that today, maybe the complaint would make that and say, because of my pregnancy. But that was not, while that was not said, it's close enough, you're arguing, for somebody who is pro se. Yes, that is what we are arguing, Your Honor. But don't we have to look at the facts that are alleged in the complaint? And I'm having a difficult time reading this complaint. To accept your argument, it seems to me I would have to conclude that an allegation that she was pregnant, that she was visibly pregnant, it was known to the world at large, and that her offers to buy the home were rejected. And that that's enough to proceed with a complaint. And that seems to me to amount to saying that being a member of a protected class and suffering some adverse consequence, adverse action, not getting the job, not getting, not having your offer accepted, is sufficient to state a discrimination claim. And I'm not sure that our pleading standards are that minimal. Your Honor, first, I understand that this complaint was confusing. It's difficult to parse through the facts. And so, with your permission, I would like to take this court through the facts that are truly relevant to the issue we're here for today. First, Fannie Mae said that Ms. Palmer was a qualified buyer at a time when the records strongly suggest they were aware of her relationship with Mr. Galvez. Second, between that time and the time of her offers, her financial status did not change  What did change during that time was that it became clear that Ms. Palmer was pregnant. And the record reflects that between those two events, Fannie Mae was made aware of her pregnancy. Fourth, upon information and belief, Fannie Mae was not getting any other hire or competing offers during this time. Fifth, they still rejected Ms. Palmer's offers, only to sell the property 16 months later for approximately 16% less than Ms. Palmer's final offer. The question is, the link between her pregnancy and the reason that they might have—now, isn't part of your argument, though it hasn't been stated that clearly, frankly, that had she not been pregnant, there would have been no reason whatever for the seller to have to suspect her relationship to the person they didn't want to have buy the house. So that the pregnancy was a fundamental part of what happened. If she hadn't been pregnant, they would have sold to her because they would have had no reason to think about this other thing. Now, this other thing may be a valid defense, but a valid defense can't be made in a 12b6. So that the fact of pregnancy was in fact the link. Exactly, Your Honor. Well, apart from that, though, the reason about not allowing her fiancé or whatever you want to call him to benefit from and get a free windfall from this transaction was in the complaint. And that, I think, although whatever one wants to argue about the morality of that, would exempt this from the operation of this discrimination, the Fair Housing Act. And it's in the complaint. And so aren't we, when we look at the complaint, aren't we looking at the complaint to see whether it states a plausible clause of action? And in judging whether it does, don't we look at alternative explanations? And there is an alternative explanation on the face of the complaint. Your Honor, first I'd like to clarify that in the complaint, Ms. Palmer stated that while it may have made sense for Fannie Mae to hold Mr. Galvez accountable to the remaining amount on the mortgage, she never said it would have made sense to hold her to that amount given she wasn't a party to that mortgage and had no legal relationship to him at the time. Furthermore, even if it is plausible that Fannie Mae acted the way they did in order to prevent a potential windfall to Mr. Galvez, that doesn't undermine the plausibility of the claims that Ms. Palmer has set forth. Even if this case were allowed to proceed, she would not have to demonstrate that her pregnancy was the sole motivating factor behind their actions. She would merely have to demonstrate that it was a motivating factor. But it's true at that point that they were living together, and now they're not. But at that point they were living together, so Mr. Galvez would have basically gotten the house free and clear without having to pay the balance of the mortgage, in terms of his own living conditions and his living situation. Is that what's alleged in the complaint? Your Honor, first I see my time is about to run out, may I conclude? Even if Fannie Mae has this alleged policy of trying to prevent windfalls to people who are about to default, which I might like to make clear, whether or not they have such a policy is not shown in the record, and what exactly that policy would be is not in the record. Even if they had such a policy, and even if they considered that policy in dealing with her, it's implausible that they considered Ms. Palmer's pregnancy in dealing with her. Whether it be independently of the policy, or whether it be in trying to apply that policy. So even if they have such a policy, and even if they considered such a policy, and even if all of that is plausible, that doesn't make what Ms. Palmer pleaded in her complaint implausible. And therefore, this should be allowed to survive a motion to dismiss so Ms. Palmer can at least get an answer, if not proceed to discovery. Thank you. May it please the Court, John DeCaro, Shapiro, DeCaro, and Barack, on behalf of the appellee Federal National Mortgage Association, a.k.a. Fannie Mae, obviously the appellant seeks to have this court reverse the district court's ruling, dismissing the plaintiff's second amendment complaint, and denying permission to replead. We'd argue that you should affirm the court below. Right, but what about the inference that your adversary is suggesting, that she was approved as a buyer, and then she made offers that were consistent with what the property would be sold for? But she was turned down after they found out that she was pregnant, after it was obvious that she was pregnant. She was approved as a buyer before they knew she was pregnant, right? I believe so, Judge, but I'd suggest to you that at the time . . . first of all, I'm speaking a bit anecdotally, but the truth is there were simply thousands of cases like this. The fact that Fannie Mae or any loan holder did not immediately pay attention to the fact that we had a party who would, if they agreed . . . Well, this is a little different because you've got Galvez, who was the owner, and so it's keyed in, as Judge Calabresi indicated with one of his questions, it's keyed into their relationship, and their relationship became starkly apparent when her pregnancy was known. Well, Judge, I'm not clear on how they determined that she was Mr. Galvez's fiancée. I'm not sure about that. Well, you don't have to be. It's a question of what the complaint . . . what inference can be drawn from the complaint. Well, again, I'd suggest to you that the pleadings . . . obviously the Court's well aware of the pleading standards. All the complaint technically says is that she was pregnant. I have two problems with that. One, if the problem is literally that the complaint didn't say something like, when they found out that I was pregnant, they decided that my relationship with this man was serious enough so that he would get the benefit of it, while if I were simply living with him but not pregnant, that wouldn't be. If that is the problem, then shouldn't the Court have allowed an amendment? The Court did not allow and deny an amendment on the ground that this was the third time, which might have been a valid reason. It denied an amendment on the ground that it was futile. Now denying it on the ground that it is futile means that no amendment would state what would be needed. But we've just been presenting a series of things which would make that link, which they're saying is already there, but even if it wasn't already there, isn't that something that the amendment could state? Well, Judge, I think you're making an assumption, which may or may not be warranted, but the assumption is that the only reason that they concluded that Mr. Galvez might benefit . . . No, I don't need to make that assumption. The question is, if they say that in an amended complaint, isn't that enough under Little John and our reading of these things to say it should not be a 12b-6? You may well win later on, but our whole policy in these discrimination cases is to get by 12b-6. This has been so on this Court since we went in bank in Vassar, because in discrimination cases, we want an answer because the answer tells us something. We're not saying that she wins, it's just what is 12b-6. I understand your point, Judge. I simply tell you that many times when a defaulted borrower has an opportunity to somehow maintain a connection to a property through some future relationship, Fannie Mae and other . . . That's a perfectly good possible defense. The question is, is it enough in the complaint or in a complaint that could be amended, because not futile, so that it gets by 12b-6? I'm not arguing with the policy. I don't know about the policy, but that's why you get by 12b-6 and get to more specific things. Then they look to see whether the policy is real or pretextual or so on. It's not a question of who wins or loses, it's a question of 12b-6. Well, again, Judge, Fannie Mae didn't raise the issue of . . . so to speak, did not raise the issue of the fact that Mr. Galvez would benefit. Ms. Palmer raised the issue of her relationship to Mr. Galvez, and that she understood that Fannie Mae might well not want Mr. Galvez to prosper. That was contained in her complaint. The fact is, at some point, I guess the question is, she was aware of all these possibilities, and granted, she was pro se, and granted, as a result, there's a smaller burden on her, but there's not no burden . . . The point that Fannie Mae made is that the timing, which you can infer from the complaint, she was approved as a buyer, and then there came a time when her offers are not accepted, and she's told that the home is not going to be sold to her because of her relationship to Mr. Galvez, and that is at a time when she was pregnant. Why does that timing not render the complaint plausible? Assume that was pled that cleanly. Well, Judge, I guess . . . Well, again, I guess my response to that is that you were, in a sense, completing the job that Ms. Palmer should have done for herself. Granted, again, she's pro se, and I understand that we tried to give them every opportunity, but we could also say, perhaps we'd find out that there was some, you know, misanthropic member of the team on Fannie Mae who didn't want her to get it. I mean, you could assume a lot of things. I have a hard time for us trying to assume how they became aware. I mean, Ms. Palmer and Mr. Galvez lived together for a long period of time. When they got engaged, I don't know that it's in the record, but my point is, it's not unequivocal that . . . Counsel, when you said that the presiding judge made a link in the complaint that the complaint did not make, and we shouldn't stretch what the pro se person did to make it, aren't you saying that a valid complaint on these facts could have been made? If a valid complaint on these facts could have been made, wasn't the district court incorrect to deny amendment on the ground of futility? It might have denied an amendment on the ground that having given other chances, it didn't need to give another one, but futility has to be wrong if a valid complaint could have been made, and I thought you just conceded that a valid complaint could have been made. I don't know that I conceded it, Judge. I would say that under that argument that any . . . I mean, again, there's a question of that plausibility. It's a plausibility question. No, not any complaint can be made. Obviously, you can deny on futility if it's something that has nothing in it, but here it's close enough, and even if we agree with you but you cannot read it to say it, it isn't a big jump. Well, Judge, I won't concede the point. No, I would hope not. Again, I think the court's got the argument from both parties. So I'll . . . Thank you. . . . . . . do my thing. Thank you. Your Honors, opposing counsel himself said it's not clear how and when Fannie Mae knew of Ms. Palmer's relationship with Mr. Galvez or when they were aware of her pregnancy. He keeps saying we have to assume a lot of things because a lot of things aren't in the case. This just demonstrates the need for discovery here. The facts in the complaint were not stated well. No one is disputing that, but they do support a valid claim, and a valid claim can easily be implied if you take the time to parse through the complicated, long complaint. Ms. Palmer, at the least, should be given an opportunity to replead for the first time with the help of an attorney. She has a disability resulting from contracting West Nile disease that causes her to struggle with the use of language. On the timing issue, just help me understand the allegations in the complaint. Are the allegations . . . do the allegations amount to that Fannie Mae became aware of Ms. Palmer's pregnancy during the course of the negotiations? Because if that's all that's alleged, it doesn't seem to me that that raises very much in the way of a plausibility of the complaint. Or do you think there's just enough in the complaint to say that there is more specific inferences to be drawn from allegations made about timing? Your Honor, I would argue that there are enough specific facts to imply a plausible claim here. Not only did they find out that she was pregnant during the course, but they found out she was pregnant after they had told her she was a qualified buyer who they would consider offers from. They also told her she wasn't qualified to purchase the property at market rate, even though she obtained pre-approval for a loan that was above the listed asking price of the property. They also didn't tell her that when it would have made sense at the beginning of the negotiations, but rather after she had already submitted three offers. If you really want a negotiation to succeed, you explain to the other party . . . They learned that she was pregnant. Is that in the complaint? Your Honor, while the record is not extremely clear as to exactly when Fannie Mae was made aware of it, the record does show that, at the least, they were aware of it around the time of her second offer. Unless there are further questions, I will conclude. Thank you, Your Honors. Thank you. Thank you both. Well argued. Thank you. Yes. The next case on the calendar is Zobarowski-Clarkstown School District. Ms. Engel, come back. Yes, Your Honor. We like hearing your argument. Yes. Thank you very much. Thank you.